# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

JAMES D. VOGEL,

      Plaintiff,

v.                               **MEMORANDUM OF LAW & ORDER**
                                  Civil File No. 11-2563 (MJD/AJB)

E.D. BULLARD CO.,

      Defendant.

Thomas E. Glennon, Thomas E. Glennon, P.A., Counsel for Plaintiff.

Angela Beranek Brandt, Larson King, LLP, and Mauritia G. Kamer, Stites & Harbison PLLC, Counsel for Defendant.

## I.  INTRODUCTION

This matter is before the Court on Defendant E.D. Bullard Company's Motion to Transfer Venue. [Docket No. 9] The Court heard oral argument on December 9, 2011. For the reasons that follow, the Court grants Defendant's motion and transfers this case to the United States District Court for the Eastern District of Kentucky.

## II.  BACKGROUND

### A.  Factual Background

Plaintiff James D. Vogel currently resides in Faribault, Minnesota. (Vogel Aff. ¶ 1.) From 1984 to January 2011, Vogel was an employee of Detector Electronics Corporation ("Detector"), headquartered in Bloomington, Minnesota. (Id. ¶ 2.)

Defendant E.D. Bullard Company ("Bullard") manufactures personal protective equipment, such as hard hats, respiratory protection, and thermal imaging devices. (Huesing Aff. ¶ 2.) Its principal place of business is Cynthiana, Kentucky. (Id.) Bullard has no physical presence in Minnesota. (Id.) It has sold 1.1% of its total sales in 2011 through Minnesota distributors. (Id.)

In 2010, Bullard conducted a retained search to recruit candidates for the Vice President, Sales and Marketing position. (Huesing Aff. ¶ 3.) The Weingarth Group, located in Durham, North Carolina, conducted a search for candidates for Bullard. (Id.)

In September 2010, Glenn Weingarth, of the Weingarth Group, contacted Vogel in Minnesota and attempted to recruit him to leave Detector and become an employee of Bullard. (Vogel Aff. ¶ 3.) Weingarth travelled to Minnesota in October 2010 to interview Vogel for possible employment with Bullard. (Id.)

2

After the interview, the recruiter called and emailed Vogel numerous times to discuss possible employment with Bullard. (Vogel Aff. ¶ 4.)

The Weingarth Group referred Vogel to Bullard. (Huesing Aff. ¶ 3.) Bullard invited Vogel to interview with Bullard in Kentucky. (Id.)

Vogel travelled to Kentucky for his initial interview with Bullard and then travelled to Kentucky a second time to meet additional members of Bullard's management team. (Huesing Aff. ¶ 4.) The specific terms of employment were negotiated by telephone and email. (Id.) Bullard President, Eric Pasch, and Bullard CEO, Richard Miller, directed letters, emails, and telephone calls to Vogel in Minnesota to discuss employment with Bullard. (Vogel Aff. ¶ 4.)

On December 30, 2010, Bullard emailed a letter to Vogel, offering him the position at Bullard. (Huesing Aff. ¶ 4; Vogel Aff. ¶ 5.) On December 30, 2010, and December 31, 2010, from Vogel's home in Minnesota, Vogel had telephone conversations with Pasch to discuss the elements of Bullard's offer of employment. (Vogel Aff. ¶ 5.) On those days, Pasch sent additional emails to Vogel about the offer. (Id.) On December 31, Bullard emailed Vogel a revised employment letter, which confirmed the principal elements of the offer of employment that had been discussed on the telephone. (Id.)

3

In January 2011, while in Minnesota, Vogel accepted Bullard's offer of employment. (Huesing Aff. ¶ 5; Vogel Aff. ¶ 7.) He resigned from Detector and his wife resigned from her job as a teacher in Minnesota in order to relocate to Kentucky with her husband. (Vogel Aff. ¶ 7.) Vogel moved to temporary housing in Kentucky and, eventually, leased a home in Georgetown, Kentucky. (Huesing Aff. ¶ 5.)

Vogel reported directly to Pasch. (Huesing Aff. ¶ 5.) Vogel was in charge of Bullard's sales and marketing throughout the United States. (Id.) He generally performed his duties at Bullard's headquarters in Cynthiana, Kentucky. (Id.)

According to Vogel, during the recruitment process, Bullard made representations regarding his future employment such as that the employment relationship would produce "only positive outcomes;" that the management would give Vogel full support for the next two years; that Vogel would receive financial rewards; and that Vogel's transition would be "as smooth as possible." (Compl. ¶ 6.) Vogel alleges that, once he started working for Bullard in Kentucky, he discovered that Bullard's representations to him were untrue. (Compl. ¶¶ 8-9, 12; Vogel Aff. ¶ 8.) He alleges that the majority of the

4

representations made to him by Bullard were made to him or confirmed with him when he was in Minnesota. (Vogel Aff. ¶ 6.)

Bullard terminated Plaintiff's employment on July 6, 2011, during a conversation that took place in Cynthiana. (Huesing Aff. ¶ 6.) The reason given for the termination was that "Bullard is not the place for you." (Vogel Aff. ¶ 8.)

Bullard has had no contact with Vogel since his termination, except for a brief discussion between Vogel and Bullard's Human Resources Director concerning the mechanics of his separation from Bullard. (Huesing Aff. ¶ 6.)

### B. Procedural History

On August 16, 2011, Vogel filed a Complaint against Bullard in Rice County, Minnesota, District Court. The Complaint alleges: Count One: breach of employment agreement; Count Two: recovery of unpaid wages and compensation under Kentucky Revised Statute § 337.385; Count Three: fraud and misrepresentation; Count Four: negligent misrepresentation; Count Five: equitable estoppel; and Count Six: Minnesota Declaratory Judgment Act claim to declare a written agreement void.

On September 6, 2011, Bullard removed the action to this Court based on diversity jurisdiction. Bullard now moves to transfer this matter to the United States District Court for the Eastern District of Kentucky.

**III. DISCUSSION**

**A. Standard**

Under 28 U.S.C. § 1404(a), "[f]or the convenience of the parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." Terra Int'l, Inc. v. Miss. Chem. Corp., 119 F.3d 688, 695 (8th Cir. 1997). When considering a motion to transfer, the Court must consider three factors: "(1) the convenience of the parties, (2) the convenience of the witnesses, and (3) the interests of justice." Id. at 691. However, "such determinations require a case-by-case evaluation of the particular circumstances at hand." Id.

**B. Convenience of the Parties and the Witnesses**

6

When analyzing the convenience prong, courts typically consider "(1) the convenience of the parties, (2) the convenience of the witnesses – including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and documents, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law." Terra Int'l, Inc., 119 F.3d at 696.

### 1. Convenience of the Parties

"When plaintiff and defendant are in different states there is no choice of forum that will avoid imposing inconvenience. . ." In re Nat'l Presto Indus., Inc., 347 F.3d 662, 665 (7th Cir. 2003). When the potential inconvenience to the parties is comparable, "the tie is awarded to the plaintiff." Id.

Plaintiff will be inconvenienced by travelling to Kentucky for deposition or trial. Bullard, which has no physical presence in Minnesota, would inconvenienced by litigating in Minnesota. Because a tie is awarded to the plaintiff, and because it would be more of an inconvenience to an unemployed individual to travel to a foreign state than for a large business to do so, this factor weighs against transfer.

7

### 2. Convenience of the Witnesses

The convenience of the witnesses weighs strongly in favor of transfer. All potentially relevant deponents or witnesses, except for Plaintiff, and, perhaps, his wife, reside outside of Minnesota. The vast majority are located in or near Kentucky. Plaintiff's Complaint explicitly mentions Bullard Kentucky employees Richard Miller, Eric Pasch, and Edward Bullard. (See, e.g., Compl. ¶¶ 5-6.) Other relevant witnesses, such as Phyllis Pasch, who assisted Plaintiff in his relocation efforts, and Tom Korb, a former Bullard employee who is mentioned in the Complaint (Compl. ¶ 12), are located in Kentucky. The Complaint further alludes to other, unnamed, Bullard employees in Kentucky. (See Compl. ¶ 12.) Almost all of the relevant witnesses are located in the Eastern District of Kentucky: the Bullard employees who allegedly caused the unpleasant atmosphere at the company, who allegedly promised certain benefits, who allegedly breached those promises, and who fired Vogel. Bullard also seeks to depose Weingarth, the recruiter who recommended Plaintiff. Weingarth is located in North Carolina, which is closer to Kentucky than to Minnesota.

Vogel claims that Detector employees who worked with him in Minnesota may be witnesses. He has failed to show how any of these potential witnesses would be relevant to the case. Vogel's performance at Detector does not relate to

8

any of the elements of any of his claims. Also, in the parties' joint Rule 26(f) Report, Vogel has represented that his is seeking damages based on benefits he claims were promised by Bullard. None of the claimed damages appear to relate to his employment at Detector. Therefore, Vogel's prior employment at Detector does not have any apparent relevance to the calculation of these claimed damages.

Vogel also asserts that certain former Bullard employees would be relevant witnesses. However, Debbie Kenny resides in Kansas, and Barry Phillips resides in New York (Vogel Aff. ¶ 16), so they will be similarly inconvenienced whether the trial is held in Minnesota or Kentucky.

### 3. Accessibility of the Records

The accessibility of the records weighs strongly in favor of transfer. Vogel's Bullard employment records and Bullard policies and records are housed at Bullard's headquarters in Kentucky. Vogel has not shown that any Detector records would be relevant.

### 4. Minnesota Connection

The location where the relevant conduct occurred factor weighs strongly in favor of transfer. Viewing the evidence and allegations in Vogel's favor, some

9

relevant conduct could be interpreted to have occurred in Minnesota insofar as Bullard made actionable representations to him over the telephone when he was in Minnesota and through email that he received in Minnesota. However, the lion's share of the actions occurred in Cynthiana, Kentucky.

First, even if representations reached Vogel in Minnesota through the telephone or email, they all emanated from Cynthiana. Second, representations were made to Vogel when he twice visited Cynthiana to interview for the position and meet Bullard management. Third, according to the Complaint, the "Agreement," upon which Count Six is based, was negotiated, executed, and performed in Cynthiana. Fourth, the alleged breaches of the contract and the failure to meet promises all occurred in Cynthiana. Fifth, the claim for failure to pay wages, Count Two, is based on a failure to pay in Cynthiana – and is explicitly based on the Kentucky statute.

### C. Interests of Justice

When analyzing the interest of justice, courts typically consider "(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgment, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the

advantages of having a local court determine questions of local law." Terra Int'l, Inc., 119 F.3d at 696.

### 1. Judicial Economy

The judicial economy factor weighs slightly towards transfer. This Court has not yet invested resources in this case yet – the parties have not even conducted the pretrial scheduling conference before the Magistrate Judge, so transfer would not entail duplication. Both courts are equipped to handle this case. The Eastern District of Kentucky does have far less congested dockets than the District of Minnesota.

### 2. Plaintiff's Choice of Forum

This factor weighs slightly against transfer because Plaintiff is a Minnesota resident and chose Minnesota as his forum. However, a plaintiff's choice of forum is afforded "significantly less deference" when the underlying events giving rise to the litigation did not occur in the forum. See Nelson v. Soo Line R.R., 58 F. Supp. 2d 1023, 1026 (D. Minn. 1999).

### 3. Comparative Costs to the Parties

This factor weights against transfer because Vogel is unemployed and located in Minnesota, so it would be more difficult for him to litigate a case in the

11

Eastern District of Kentucky than it would be for Bullard, a company with national sales, to litigate a case in the District of Minnesota.

### 4. Ability to Enforce a Judgment, Obstacles to a Fair Trial, and Conflict of Law Issues

These factors are neutral. There does not appear to be an issue with any of these factors.

### 5. The Advantages of Having a Local Court Determine Questions of Local Law

This factor weighs towards transfer. Vogel claims that Minnesota law applies. However, even in his Complaint, he pleads a Kentucky statutory cause of action to recover unpaid wages. Additionally, Kentucky law likely applies to Count Six, which is based on the "Agreement" negotiated, executed, and performed solely in Kentucky. As for the remaining claims, the parties have not analyzed which state's law should apply. Without a detailed analysis, the Court will not opine on the correct law, but notes that Vogel's entire case is based on Vogel's employment in Kentucky.

### D. Conclusion

Weighing all of the above factors, the Court grants Defendant's motion to transfer this case to the United States District Court for the Eastern District of

Kentucky.  The underlying facts of this case occurred almost solely in Kentucky, almost all relevant witnesses and documents are in Kentucky, and Kentucky law will apply to at least some of Plaintiff's claims.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

1. Defendant E.D. Bullard Company's Motion to Transfer Venue [Docket No. 9] is **GRANTED**.

2. This matter is transferred to the United States District Court for the Eastern District of Kentucky.


Dated:  January 8, 2012                         s/ Michael J. Davis
                                                Michael J. Davis
                                                Chief Judge
                                                United States District Court